**SO ORDERED.**

**SIGNED this 27th day of May, 2021.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

```
In re:                            )
                                  )
Leonardo Portuesi,                )     Chapter 13
                                  )     Case No. 19-11275
       Debtor.                    )
_____)
                                  )
Leonardo Portuesi and Anita Jo    )
Kinlaw Troxler, Trustee,          )
                                  )
       Plaintiffs,                )
                                  )     Adv. No. 20-2018
v.                                )
                                  )
The Bank of New York Mellon Trust )
Company, N.A.,                    )
                                  )
       Defendant.                 )
```

**MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO DISMISS**

This adversary proceeding came before the Court on the Motion to Dismiss Amended Complaint filed by Defendant, The Bank of New York Mellon Trust Company ("Defendant"). ECF No. 16 ("Motion"). The Court denied the Motion and indicated that it would supplement its order with this opinion further setting out the bases for its ruling. ECF No. 31. For the reasons

1

that follow, the Motion was denied.

## I.    JURISDICTION AND AUTHORITY

The Court has jurisdiction over these proceedings under 28 U.S.C. § 1334.    Under 28 U.S.C. § 157, the United States District Court for the Middle District of North Carolina has referred this case and these proceedings to this Court by its Local Rule 83.11.    These are statutorily core proceedings under 28 U.S.C. § 157(b).    The parties have expressly consented to the entry of final orders by this Court for all matters raised in the pleadings in this proceeding.    ECF No. 14.    Venue is proper under 28 U.S.C. § 1409.

## II.    PROCEDURAL BACKGROUND

Plaintiff Leonardo Portuesi ("Debtor") commenced this adversary proceeding on August 14, 2020.    ECF No. 1.    Defendant filed a motion to dismiss arguing, among other things, that Debtor does not have standing to bring an avoidance action under 11 U.S.C. § 544.    ECF No. 7.    Debtor filed a Motion to Amend Complaint (ECF No. 10, "Motion to Amend") seeking to join the chapter 13 trustee, Anita Jo Troxler ("Trustee"), as a co-plaintiff, and the Court granted Debtor's Motion to Amend.    ECF No. 11.

Debtor and Trustee ("Plaintiffs") thereafter filed an amended complaint, ECF No. 12 ("Amended Complaint"), and the Court denied Defendant's first motion to dismiss the original

complaint as moot.   ECF No. 11.   Defendant similarly moved to dismiss the Amended Complaint under Fed. R. Civ. P. Rules 12(b)(1) and (6), made applicable to this proceeding by Bankruptcy Rule 7012, ECF No. 16, and filed a memorandum of law in support of the Motion.   ECF No. 17 ("Supporting Memo"). Plaintiffs filed a Response to Defendant's Motion, (ECF No. 20, "Plaintiffs' Response"), and related Memorandum of Law in Response to Defendant's Motion.   ECF No. 21 ("Plaintiffs' Memo"). On March 31, 2021, the Court entered an Order denying Defendant's Motion.   ECF No. 31.

### III.   FACTUAL BACKGROUND

Debtor's mother Anna Portuesi ("Debtor's Mother") obtained an undivided interest in real property located at 170 Riverwood Drive, Browns Summit, Rockingham County, NC 27214 ("Property"), and recorded her interest on October 6, 2006 with the Rockingham County Register of Deeds.   ECF No. 12 at ¶ 9.   On December 23, 2008, Debtor and Debtor's Mother obtained a mortgage loan from Ideal Mortgage Bankers, Ltd ("Lender").   Id. at ¶ 12.   Debtor's Mother then attempted to convey an interest in the Property to Debtor as tenants in common through a gift deed.   Id. at ¶ 10. Although the Property is located in Rockingham County, she recorded the gift deed in the Guilford County Register of Deeds on June 19, 2009.   Id.

Debtor and Debtor's Mother granted Lender a Deed of Trust

on February 4, 2010 (the "Deed of Trust") to secure the mortgage loan. Id. at ¶ 12. Lender similarly recorded the Deed of Trust in the Guilford County Register of Deeds. Id. Almost two years later, on December 19, 2011, Debtor's Mother filed a chapter 7 bankruptcy petition in the Middle District of North Carolina, Case No. 11-11909. Id. at ¶ 14. The Court granted her a discharge on April 2, 2012, thereby discharging her personal liability on the mortgage obligation. Id. Lender transferred the Guilford County Deed of Trust to GMAC Mortgage on September 12, 2012, and GMAC Mortgage recorded notice of the transfer in Guilford County. Id. at ¶ 13.

Debtor filed a chapter 13 bankruptcy case in the Middle District of North Carolina on March 12, 2013, Case No. 13-10315. In his schedules, Debtor listed a joint interest in the Property. Id. at ¶ 15. Ocwen Loan Servicing, LLC ("Ocwen"), the mortgage servicer at the time, filed a secured claim, asserting a lien in the Property. Id. at ¶ 16.[1] Debtor objected to Ocwen's secured claim, and the Court found that Ocwen's claim was unsecured because the Deed of Trust was not recorded in Rockingham County. Id. at ¶ 16; see also In re Portuesi, Case No. 13-10315, ECF No. 28 (Bankr. M.D.N.C. August 29, 2013). Ocwen re-recorded the Deed of Trust in Rockingham County on August 12, 2013 without

---

[1] During Debtor's first bankruptcy case, GMAC assigned the Deed of Trust to Ocwen, and again recorded this assignment in Guilford County on April 9, 2013. Id. at ¶ 13.

seeking or obtaining relief from the automatic stay or the codebtor stay.  Id. at ¶ 17.  Debtor's chapter 13 discharge was entered on June 29, 2016.  Id. at ¶ 16.

Ocwen's recording of the Deed of Trust in Rockingham County brought it into Debtor's Mother's chain of title.  Id. at ¶ 19. On May 2, 2017, Debtor's Mother effectively transferred her remaining undivided interest to Debtor and recorded the transfer in the Rockingham County Register.  Id. at ¶ 11.

After acquiring the Deed of Trust from Ocwen, Defendant commenced a power of sale foreclosure in Rockingham County.[2]  The Clerk denied the foreclosure because Defendant failed to prove the existence of a valid debt, but the Rockingham County Superior Court allowed the foreclosure on appeal under de novo review.  ECF No. 17 at ¶ 23-26.  In defense to the foreclosure action, Debtor argued that the recording of the Deed of Trust was void because it was done in violation of the automatic stay. Id. at ¶ 24.  Defendant argued that, at the time it recorded the Deed of Trust in Rockingham County, Debtor did not own any interest in the Property because the prior gift deed was void under N.C. Gen. Stat. § 47-26.  Id. at ¶ 25.  Defendant further argued that perfection was immaterial to the foreclosure because it did not affect the validity of the underlying debt or the

---

[2] Defendant was the first to note in the pleadings that there was a previous foreclosure action.  ECF No. 16 at 2; ECF No. 17 at ¶ 22.

effectiveness of the Deed of Trust inter se.  See id. at Exhibit C, 60-61.

The Rockingham County Superior Court filed a written order on September 24, 2019.  Id. at Exhibit D, 72-75 ("Foreclosure Order").  The Foreclosure Order found the debt valid and that the "Bank of New York is the holder of the Note."  Id. at ¶ 10. Defendant sold the Property at foreclosure on November 23, 2019. ECF No. 17 at ¶ 29.  Debtor commenced his current chapter 13 bankruptcy case (Case No. 19-11275) within the ten-day upset bid period under N.C. Gen. Stat. § 45-21.27.  ECF No. 17 at ¶ 30.

Debtor's schedules list the Property as his and the Defendant's loan as disputed.  Case No. 19-11275, ECF No. 1.  On September 20, 2020, Trustee filed a notice that Debtor changed his address to the Property address.  See ECF Nos. 67 and 69. The Court confirmed Debtor's chapter 13 plan on September 23, 2020.  Among the other provisions of the confirmed plan, Section 9 of the plan provides as follows:

> By Order entered July 1, 2020, the Debtor's objection to Claim No. 5 of The Bank of New York Mellon ("BNYM") was sustained to the extent that Claim No. 5 was disallowed solely to the Debtor's personal liability on the Note with the determination of the extent, validity, priority or enforceability of the lien of BNYM on the Debtor's non-residential real property, commonly known as 170 Riverwood Drive, Browns Summit, North Carolina ("property") being reserved for further order of the Court upon the filing of an Adversary Proceeding by the Debtor. The Debtor has filed an Adversary Proceeding challenging the extent, validity, priority or enforceability of the lien of BNYM against

6

> the Debtor's property. A finding that there is no
> valid lien against the Debtor's property will result
> in a liquidation requirement of $25,575.00, which will
> pay all allowed unsecured claims in full with interest
> at 7.0%. If the lien of BNYM is held to be a valid
> lien, automatic stay is lifted to allow BNYM 180 days
> from the entry of the judgment/order entered in the
> Adversary Proceeding to liquidate the property and
> file a documented deficiency claim. Funds for allowed
> unsecured claims will be reserved pending final
> determination of lien status in the Adversary
> Proceeding and the reserve will be removed for funds
> to be distributed upon entry of the order resolving
> the Adversary Proceeding.

ECF No. 72.

The Amended Complaint requests an order providing that (1) Defendant's predecessor-in-interest violated the codebtor stay under 11 U.S.C. § 1301 when it recorded the Deed of Trust in Rockingham County without first obtaining relief from this Court; (2) the recording of the Deed of Trust is void; (3) Defendant's unrecorded Deed of Trust is avoidable under 11 U.S.C. § 544; (4) once avoided, the secured claim should be disallowed; and (5) Debtor be allowed reasonable attorney fees. ECF No. 12 at 4-5.

In response, Defendant argues that the Court does not have subject matter jurisdiction, and Plaintiffs fail to state a claim upon which relief may be granted. Specifically, Defendant makes six arguments. First, Defendant alleges the Court does not have subject matter jurisdiction over Debtor's claims under the Rooker-Feldman doctrine because the Amended Complaint is a

collateral attack on a state court foreclosure judgment. ECF
No. 16 at ¶ 1. Second, Defendant argues that neither Debtor nor
the Trustee have standing. Id. at ¶ 2. Debtor does not have
independent standing to bring the avoidance claim under § 544.
Id. Trustee does not have standing to bring the avoidance claim
under § 544 because the avoidance "[does] not provide a benefit
to the estate and unsecured creditors." Id. Third, Defendant
argues collateral estoppel and res judicata bar the Plaintiffs
from disputing the validity of the lien. Id. at ¶¶ 5-6.
Fourth, Defendant alleges the act of recording a deed is a
ministerial act that does not violate the codebtor stay under 11
U.S.C. § 1301. Id. at ¶ 6. Fifth, Defendant argues the statute
of limitations, laches, or waiver bar the claim. Id. at ¶ 8.
Sixth, Defendant argues that Plaintiffs have failed to state a
claim upon which relief can be granted because there was no
transfer of property subject to avoidance under § 544(a).

### IV.   STANDARD OF REVIEW

Rule 12(b)(1) motions may be premised on either facial or
factual attacks on jurisdiction. Lutfi v. United States, 527 F.
App'x 236, 241 (4th Cir. 2013). "A facial attack is a challenge
to the sufficiency of the pleading itself . . . A factual attack,
on the other hand, is . . . a challenge to the factual existence
of subject matter jurisdiction." Villasenor v. Indus. Wire &
Cable, Inc., 929 F. Supp. 310, 312 (N.D. Ill. 1996) (quoting

United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1993), cert. denied, 513 U.S. 868 (1994)).  When a party properly raises a factual question attacking subject matter jurisdiction, the court can look beyond the pleadings and consider the evidence submitted on the issue to determine whether subject matter jurisdiction exists.  Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004); see also Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979); Stayner v. Village of Sugar Grove (In re Stayner), 185 B.R. 557, 561 (Bankr. N.D. Ill. 1995).

Rule 12(b)(6) requires dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The standards set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) guide the Court in determining whether to dismiss a complaint.  A complaint should survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between

possibility and plausibility of 'entitlement to relief.'"

Id. (citations omitted).

### V.   DISCUSSION

The Court considers standing and jurisdiction before deciding the merits of the case. Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."). The Court then will turn to collateral estoppel and res judicata. Finally, the Court will consider the plausibility of Debtor's claim that Defendant violated § 1301, whether laches, the statute of limitations, or waiver bar Debtor's claims at this stage of the litigation, and whether Trustee has stated a plausible claim under § 544(a).

1. **Plaintiffs have standing to bring the claims asserted in the adversary proceeding.**

Standing asks whether plaintiffs present a "case and controversy." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). As established by the Supreme Court, a "case and controversy" involves three different elements:

First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'". Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant,

and not . . . the result [of] the independent action
of some third party not before the court."  Third, it
must be "likely," as opposed to merely "speculative,"
that the injury will be "redressed by a favorable
decision."

Id. at 559-61 (citations omitted).

There are two plaintiffs in this case and "[t]he standing
requirement applies to each claim that a plaintiff seeks to
press." Bostic v. Schaefer, 760 F.3d 352, 370 (4th Cir. 2014)
(citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352
(2006)).  Therefore, the Court will consider each claim
seriatim.

### a. Debtor has standing to enforce the codebtor stay.

In his first claim for relief, Debtor asserts that Ocwen
violated the codebtor stay when it recorded the Deed of Trust
during his chapter 13 case, which renders the recording void.
To assert a cause of action through a statute, the plaintiff
must show she is a party intended to be protected by the
statute. Bank of Am. Corp. v. City of Miami, Fla., 137 S.Ct.
1296, 1302 (2017) (citing Lexmark Int'l Inc. v. Static Control
Components, Inc., 572 U.S. 118 (2014) ("In Lexmark, we said that
the label "'prudential standing'" was misleading, . . . [t]he
question is whether the statute grants the plaintiff the cause
of action that he asserts.")).  A protected plaintiff is one who
"fall[s] within the zone of interests protected by the law
invoked." Id. (citing Lujan, 504 U.S. at 560-61).

11

While § 1301 references the codebtor, its purpose is to protect a debtor from "indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor." See 11 U.S.C. § 1301 (LexisNexis) (H.R. 95-959); In re Whitlock-Young, 571 B.R. 795, 804 (Bankr. N.D. Ill. 2017). Generally, a debtor can bring a cause of action for a creditor violating the codebtor stay. See In re Juliao, Case No. 07-48694, 2011 Bankr. LEXIS 4583, at *9 (Bankr. E.D. Mich. Nov. 29, 2011) (citations omitted) (noting that "[c]ourts have generally allowed a debtor to file a motion alleging a violation of § 1301 without precluding such based on lack of standing"). Since Debtor falls within the zone of interests protected by the statute, Debtor may seek refuge under § 1301 to shield himself against the indirect pressures. See Whitlock-Young, 517 B.R. at 804-05 (finding that a debtor has standing to enforce the codebtor stay, and observing that "the express language of section 1301(d) and the legislative history of section 1301 make clear that a debtor is intended to have a dog in this particular fight."). Therefore, the Court finds that Debtor has standing to assert a claim for violation of the codebtor stay.

**b. Trustee has standing to bring a claim under § 544 to avoid any unrecorded lien.**

A chapter 13 trustee has standing to file an action to avoid liens under § 544. <u>Commerford v. Caliber Homes Loans. Inc. (In re Commerford)</u>, Case No. 14-50218, 2016 Bankr. LEXIS 2620, at *10 n.3 (Bankr. M.D.N.C. July 18, 2016). Defendant argues that a chapter 13 trustee only has standing to bring a claim under § 544 to the extent that the avoidance "would increase the amount of disposable income to be allocated among unsecured creditors and thus benefit the estate." <u>McRoberts v. Transouth Fin. (In re Bell)</u>, 194 B.R. 192, 196 (Bankr. S.D. Ill. 1996). In this case, the Court need not decide whether a benefit to the estate is an additional requirement to Trustee's standing because the plan will pay unsecured creditors only if the lien is avoided. ECF No. 21 at 4; Case No. 19-11275, ECF No. 72. Therefore, Trustee has standing to bring this lien avoidance action under § 544.

Because Debtor and Trustee have standing to bring the respective claims, Defendant's motion to dismiss for lack of standing was denied.

**2.  Neither the enforcement of the codebtor stay nor the avoidance of the perfection of the lien is barred by the <u>Rooker-Feldman</u> doctrine.**

The presence or absence of subject matter jurisdiction under <u>Rooker-Feldman</u> is a threshold issue that a court must

13

determine before considering the merits of the case. See
Friedman's, Inc. v. Dunlap, 290 F.3d 191, 196 (4th Cir. 2002).
Defendant contends that the Rooker-Feldman doctrine deprives the
Court of subject matter jurisdiction over the claims and
prevents the Court from determining whether recording the Deed
of Trust violated the codebtor stay because the effect of such a
ruling in this Court would overrule the state court's decision
on the foreclosure action.  The Court disagrees.

The Rooker-Feldman doctrine defines "original jurisdiction."
Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291
(2005)("Exxon"); Verizon Md., Inc. v. PSC, 535 U.S. 635, 644 n.3
(2002); see also Thana v. Bd. of License Comm'rs for Charles
Cty., Md., 827 F.3d 314, 318 (4th Cir. 2016); Sasson v. Sokoloff
(In re Sasson), 424 F.3d 864, 871 (9th Cir. 2005).  Rooker-
Feldman illustrates the logical conclusion that original
jurisdiction is different from appellate jurisdiction and,
therefore, federal district courts do not have appellate
jurisdiction over state court judicial judgments.  Thana, 827
F.3d at 319 (interpreting Exxon, 544 U.S. at 284, 292 n.8).

Prior to the Supreme Court's decision in Exxon, some
federal courts applied Rooker-Feldman broadly to preclude
jurisdiction where the claims and issues could have been raised
in state court.  See Barsh v. Md. Cent. Collection Unit (In re
Barsh), 197 F. App'x 208, 211 (4th Cir. 2006); Davani v. Va.

Dept. of Transp., 434 F.3d 712, 718 (4th Cir. 2006) (citing
Barefoot v. City of Wilmington, 306 F.3d 113, (4th Cir. 2002)).
In Exxon, however, the Supreme Court made clear that Rooker-
Feldman is restricted to "cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered
before the district court proceedings commenced and inviting
district court review and rejection of those judgments." Exxon,
544 U.S. at 284.

As clarified by Thana, a federal trial court does not lack
subject matter jurisdiction solely because "the same or a
related question was earlier aired between the parties in state
court." Thana, 827 F.3d at 320. As explained by the Fourth
Circuit:

> [T]he Rooker-Feldman doctrine does not stop a district
> court from exercising subject-matter jurisdiction
> simply because a party attempts to litigate in federal
> court a matter previously litigated in state court.
> If a federal plaintiff presents some independent
> claim, albeit one that denies a legal conclusion that
> a state court has reached in a case to which he was a
> party, then there is jurisdiction and state law
> determines whether the defendant prevails under
> principles of preclusion.

Davani, 434 F.3d at 718 (quoting Exxon, 544 U.S. at 293)
(emphasis in original) (internal alterations omitted); see also
Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006). The
relevant question is whether the federal plaintiff is asking the
court to rectify injuries "caused by the state-court decision."

Id.    Rooker-Feldman does not preclude federal courts from determining claims that conflict with a state court's decision if the decision does not resolve an injury stemming from the state court judgment itself.    See id. at 718-19 (quoting Hoblock v. Albany Cnty. Bd. Of Elections, 422 F.3d 77 (2d Cir. 2005) (a federal court can deny the conclusions made by a state court and make the opposite judgment as long as the injury is from someone other than the state court case)).    In Adkins, the Fourth Circuit explained that "the test is not whether the relief sought in the federal suit 'would certainly upset' the enforcement of a state court decree, [citation removed], but rather whether the relief would 'reverse or modify' the state court decree."    464 F.3d at 464 (citing Exxon, 544 U.S. at 291-92).    The plaintiffs in Adkins were not seeking to overturn the state court decisions; the plaintiffs brought the federal suit under a separate claim asking the court to find the statute unconstitutional.    Id.[3]

---

[3] The unpublished decision in Smalley v. Shapiro & Burson, LLP, 526 F. App'x 231 (4th Cir. April 16, 2013) does not mandate otherwise.    In Smalley, the court refused to entertain a challenge to the state court decision itself based on the state court's allegedly improper admission of affidavits.    The court held that the key consideration was whether the decision "would necessitate a finding that the state court 'wrongly decided the issues before it.'" Smalley, 526 F. App'x at 281.    The court emphasized the linear path that a claim, barred by Rooker-Feldman, must take: "that [a] suit was barred 'because Plaintiff's claims can only succeed if the Court implicitly or explicitly determines the [] state court wrongly decided the foreclosure issue . . ..'" Id. at 238 (citing Figueroa v. Merscorp, Inc., 766 F. Supp. 2d 1305, 1323-24 (S.D. Fl. 2011)).    The district court did not have jurisdiction to relitigate the state court's decision to adopt "unfair but truthful affidavits." Id. (internal quotations omitted).    For the reasons below, the success of Plaintiffs' claims is not dependent on a determination

Similarly, nothing in this case requires a reversal of the state court's decision to permit the foreclosure. North Carolina law requires the following elements in a foreclosure action:

> (i) [a] valid debt of which the party seeking to foreclose is the holder, (ii) [a] default, (iii) [a]right to foreclose under the instrument, (iv) notice to those entitled to such under subsection (b), (v) that the underlying mortgage debt is not a home loan as defined in G.S. 45-101(1b), or if the loan is a home loan under G.S. 45-101(1b), that the pre-foreclosure notice under G.S. 45-102 was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed, and (vi) that the sale is not barred by G.S. 45-21.12A, then the clerk shall authorize the mortgagee or trustee to proceed under the instrument, and the mortgagee or trustee can give notice of and conduct a sale. . .

N.C. Gen. Stat. § 45-21.16.

There is nothing in North Carolina law that requires a recorded deed of trust as a prerequisite to foreclosure, and Defendant's attorney conceded the point in the foreclosure proceeding. ECF No. 17 at Exhibit C, 15, ¶¶ 12-23. Defendant's attorney argued:

> ". . . I think the first thing to emphasize here is that---- recordation only affects priority, not validity. And so, an unrecorded deed of trust, an unrecorded deed, various instruments convey interest in real property. Those things can be good as between the two parties to the instrument, but they are not going to give you priority over a bona fide purchaser for value, or if you're the holder of a deed of trust, and you haven't properly recorded your deed of trust.

---

that the state court foreclosure action was wrongly decided.

> If someone else, you know, comes and records their junior deed of trust, they're going to jump ahead of you in the line. You don't have a perfected interest, then you're subject to being pushed down the chain, so to speak. But it doesn't render anything invalid."

ECF No. 17 at Exhibit C, 15-16. See also, Commerford, 2016 Bankr. LEXIS at *9 ("[I]t is well settled that a deed of trust is valid between the parties even though it is not recorded.").

Unlike in Smalley, neither Debtor nor Trustee challenge the efficacy of the underlying debt, the efficacy of the Deed of Trust inter se, that there was a default, that Defendant was the proper holder of the debt, or that proper notice of the foreclosure action was given. See N.C. Gen. Stat. § 45-21.6(d). Instead, Debtor seeks a determination that the recording of the Deed of Trust in Rockingham County is void because it was done in violation of the codebtor stay, and Trustee seeks to avoid the unrecorded Deed of Trust as a hypothetical bona fide purchaser under § 544(a)(3). Nothing in this action requires a reversal or reconsideration of the state court's foreclosure judgment. Plaintiffs are not asking this Court to decide whether the state court decision was correct or incorrect with respect to any of the requisite elements for the foreclosure action. As such, Rooker-Feldman does not apply. This Court is operating within its original jurisdiction when considering whether recording the Deed of Trust in Rockingham County violated the codebtor stay.

18

Defendant cites cases from other North Carolina bankruptcy courts that apply Rooker-Feldman to § 544 actions and foreclosure decisions. See ECF No. 17 at ¶ 49; ECF No. 8.  These cases are inapposite.  In Burcam Capital, plaintiffs challenged issues that affected the validity of the foreclosure judgment itself. Burcam Capital II, LLC v. Bank of Am., N.A. (In re Burcam Capital II, LLC), 539 B.R. 96, 99 (Bankr. E.D.N.C. 2015).  Other cases cited by Defendant similarly contain challenges to the efficacy of the foreclosure judgment.  Burgess v. CitiMortgage, Inc. (In re Burgess), 575 B.R. 330, 337-38 (Bankr. E.D.N.C. 2017); In re Campbell, Case No. 12-80096, 2012 Bankr. LEXIS 4459, at *8 (Bankr. M.D.N.C. Sept. 25, 2012) (citing Campbell v. Craig, Case No. 1:05CV847, 2007 U.S. Dist. LEXIS 13496, at *10 (M.D.N.C. Feb. 26, 2007)).  It is not within the bankruptcy court's original jurisdiction to review a state court's foreclosure judgment when the party is attacking the efficacy of the state court's judgment itself.  In this case, the § 544(a)(3) action is based on an alleged unrecorded deed of trust.  Trustee's claim under § 544 is not a sequential attack on the state court's judgment.  Therefore, the Rooker-Feldman doctrine is inapplicable to this case and the Motion was denied as to the lack of subject matter jurisdiction.

3.   **Plaintiffs are not precluded from bringing the claims under state law principles of preclusion.**

As with the analysis in <u>Rooker-Feldman</u>, nothing in the state court's judgment precludes a determination whether recording the Deed of Trust in Rockingham County violated the codebtor stay.  "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts . . . to give state judicial proceedings 'the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" <u>Parsons Steel, Inc. v. First Ala. Bank</u>, 474 U.S. 518, 519 (quoting 28 U.S.C. § 1738).  Federal courts apply the preclusion principles of the state where the judgment was entered.  <u>Id.</u> at 523; <u>see</u> <u>Hof v. Caswell (In re Caswell)</u>, 605 B.R. 401, 410 (Bankr. M.D.N.C. 2019) (citing <u>In re McNallen</u>, 62 F.3d 619, 624 (4th Cir. 1995)).  Defendant argues that Plaintiffs' claims are barred by issue preclusion and claim preclusion.

Issue preclusion applies under North Carolina law where "the determination of an issue in a prior judicial . . . proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." <u>Gray v. Fed. Nat'l Mortg.</u>, 830 S.E.2d 652, 657 (2019) (quoting <u>Whitacre P'ship v. Biosignia, Inc.</u>, 358

N.C. 1, 15 (2004)).  The following requirements must be met: (1) the issue is identical to an issue actually litigated *and necessary to the judgment*; (2) the prior action resulted in a final judgment on the merits; and (3) the current parties are the same as, or in privity with, the parties to the earlier action.  See Sartin v. Macik, 535 F.3d 284, 289 (4th Cir. 2008) (citing Thomas M. McInnis & Assoc., Inc. v. Hall, 318 N.C. 421, 428-29 (1986)) (emphasis added).

Claim preclusion applies when a party attempts to relitigate the same cause of action.  ACC Constr. v. SunTrust Mortg., Inc., 239 N.C. App. 252, 261-62 (N.C. Ct. App. 2015).  The elements include: (1) a final judgment on the merits in a prior suit; (2) identity of the cause of action in the prior suit and the later suit; and (3) identity of or privity with the parties in both suits.  Id. at 262.  Under North Carolina law, res judicata or claim preclusion bars relitigating claims previously presented or claims that could have been presented.  King v. Grindstaff, 284 N.C. 348, 356 (1973) (quoting Cromwell v. County of Sac, 94 U.S. 351, 355 (1877)).

Collateral estoppel and res judicata, respectively, do not apply if the current action is not identical to an issue actually litigated *and necessary* to the judgment or the current case lacks identity of the cause of action in the prior suit and the later suit.  See id. at 355-56 (emphasis added).  As discussed

21

above, perfection is not a prerequisite to foreclosure in North Carolina.   Therefore, the parties did not litigate whether the recording was void,[4] and the Motion was denied on the grounds of issue preclusion and claim preclusion.

### 4. Plaintiffs have stated a plausible claim that recording the Deed of Trust in Rockingham County violated the codebtor stay under 11 U.S.C. § 1301.

Having determined that the Rooker-Feldman doctrine is inapplicable, Plaintiffs have standing, and the claims in this case are not precluded, the Court will consider whether the Amended Complaint should be dismissed under Rule 12(b)(6).   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.   Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citing Schatz v. Rosenberg, 943 F.2d 485, 489)).   Rule 8(a)(2) requires a claim for relief to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   This rule demands a plaintiff provide "enough facts to state a claim to relief that is plausible on its face," and involves pleading more than "labels [or] conclusions" or a "formulaic recitation of the elements of a cause of action."   Twombly, 550 U.S. at 570 and 555; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing the same).   Factual allegations must be sufficient to

---

[4] Because neither collateral estoppel, nor res judicata apply for the reasons stated herein, the Court need not consider whether Trustee is in privity with Debtor for purposes of either doctrine under North Carolina law.

raise the right to relief above the speculative level. <u>Twombly</u>, 550 U.S. at 555. The plaintiff's complaint should include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Therefore, the Court must determine whether Plaintiffs plead sufficient and plausible factual allegations that a violation of § 1301 may have occurred. The issue in this case is whether recording the Deed of Trust in Rockingham County constituted an "act . . . to collect . . . all or part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt . . . " as contemplated by § 1301. There is no dispute in this case that the mortgage loan was a consumer debt or that the Property secured the debt. The issue is whether the Bankruptcy Code prohibits the perfection of a lien against a codebtor's property.

When interpreting a statute, the "cardinal rule . . . is that the intent of Congress is to be given effect." <u>Sierra Club v. United States Army Corps of Eng'rs</u>, 909 F.3d 635, 645 (4th Cir. 2018) (citing <u>NLRB v. Wheeling Elec. CO.</u>, 444 F.2d 783, 787 (4th Cir. 1971)). Section 1301 "is designed to protect a debtor operating under a Chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through his friends or relatives that may have cosigned

23

an obligation of the debtor." 11 U.S.C. § 1301 (LexisNexis) (H.R. 95-959); see In re Whitlock-Young, 571 B.R. at 804; Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A., 10 B.R. 488, 491 (N.D. Ill. 1981); 7 Norton Bankr. L. and Prac. 3d § 143:26, Origin of the codebtor stay. When determining whether an action violates the codebtor stay, bankruptcy courts consider whether the challenged action could have the effect of directly or indirectly pressuring the debtor through the codebtor. Some courts have interpreted the potential effect on the debtor broadly. For example, the bankruptcy court in the Southern District of Georgia decided that reporting a codebtor's delinquent debt on a credit report may violate the codebtor stay because it can infer an intent to collect a debt. Singley v. Am. Gen. Fin. (In re Singley), 233 B.R. 170, 173 (Bankr. S.D. Ga. 1999). The debtor in Singley filed for bankruptcy and scheduled a debt on which his wife was a non-filing co-signor. Id. at 172. The creditor added a notation on Mrs. Singley's credit report that read, ". . . this account is included in or completed through bankruptcy chapter 13. Previously was current and all payments were made on time." Id. Mrs. Singley was refused credit because of the notation, prompting the adversary proceeding where Mr. and Mrs. Singley alleged the creditor violated the codebtor stay. Id. The creditor filed a motion for summary judgment arguing that truthful credit reporting does

24

not violate § 1301 and that the credit report and notation was "devoid of any indicia of intent to collect." Id. at 174. The court found that the creditor did not meet its burden. Id. The court was "unable to conclude, based on the facts presented . . . that . . . [creditor] did not act with the intent to collect the debt form Mrs. Singley and/or Debtor when it made the report to the credit bureau." Id.

Other courts have been more limiting. See In re Burkey, Case No. 09-12371, 2012 Bankr. LEXIS 5516, at *13-14 (Bankr. N.D.N.Y. Nov. 28, 2012) (finding that reporting a codebtors "past-due" bill to a credit reporting agency does not violate the codebtor stay when it does not accompany a quid-pro-quo); In re Juliao, 2011 Bankr. LEXIS 4583, at *16-17 (finding that reporting a delinquent charge to a credit reporting agency does not violate the codebtor stay because "a co-debtor stay violation requires the creditor to act in an overt and intentional manner or which has the inescapable and inevitable effect of exerting pressure on the debtor by way of the co-debtor.").

In connection with a motion to dismiss, the Court must view the alleged facts in a light that is most favorable to Debtor and draw every reasonable inference in favor of the non-movant. The facts alleged in the Amended Complaint are sufficient to infer at this stage of the litigation that recording the Deed of

Trust in Rockingham County could have created direct pressure on Debtor. Debtor's Mother owned the Property and had attempted, albeit unsuccessfully, to transfer her interest to the Debtor. Debtor now lives in the Property, and the Court may reasonably infer from the attempted transfer, Debtor's expectations of ownership, and Debtor's current residence that recording the Deed of Trust could have pressured Debtor to attempt to satisfy the lien during his bankruptcy case, rather than object to the claim. This is a result that Congress sought to avoid through § 1301.

When considering the scope of § 1301, some courts draw a distinction between in personam actions and in rem actions, with the former being prohibited by § 1301 but not the latter. See In re Dev, 593 B.R. 435, 447 (Bankr. E.D.N.C. 2018) (in dicta, distinguishing between in rem and in personam actions and finding that the foreclosure on a deed of trust does not violate the codebtor stay because it is an in rem proceeding in North Carolina when the power of sale is exercised against the affected property, rather than against the individual owner, but noting that collecting a deficiency judgment would require relief from the codebtor stay); but see In re Whitlock-Young, 571 B.R. at 807 (applying Illinois law and finding that a foreclosure was a violation of the codebtor stay because it was a quasi in rem proceeding). Courts concluding that § 1301 is

26

limited to in personam acts against the codebtor rather than in rem acts like a foreclosure base their decisions at least in part because the language of § 1301 most closely parallels the prohibitions in § 362(a)(1).[5]  Id.  Neither party in this case contends in its filings that § 1301 excludes actions in rem. And, while § 1301 is similar to § 362, and the similarities may be helpful, "the two stays are separate and distinct," King v. Wells Fargo Bank, N.A. (In re King), 362 B.R. 226, 232-33 (Bankr. D. Md. 2007), and the codebtor stay under § 1301 reaches further than the stay under § 362(a) in some ways.  See 8 Collier on Bankruptcy ¶ 1301.01 (16th ed. 2020) ("Significantly, the codebtor stay applies to some actions that are excepted from the automatic stay of section 362(a)."); 7 Norton Bankr. L. and Prac. 3d § 143:26, Origin of the codebtor stay (noting that the automatic stay alone was insufficient to protect the reorganization process in former Chapter 13, and the codebtor stay "is the solution enacted by Congress to prevent 'indirect pressure [on the debtor] to pay certain creditors in full immediately'" and was "intended by Congress to permit Chapter 13 debtors to consummate confirmed plans unimpeded by creditor actions against codebtors") (citations omitted).  Moreover, the plain language of § 1301 protects codebtors who may not be liable on the debt, but whose property "secured such debt."  11

_____

[5] Section 362(a)(1) prohibits "the commencement or continuation . . . of . . . [any] action . . . to recover a claim against the debtor."

U.S.C. § 1301(a) (protecting an "individual that is liable on such debt with the debtor, or that secured such debt" (emphasis added)). It is difficult to envision what type of act could be taken to collect a debt against an individual who merely secured the debt that would not be in rem as to the affected collateral. Therefore, the Court respectfully disagrees that all in rem actions do not fall within the contemplation of the statute.

At least one published opinion has considered the scope of the codebtor stay with respect to perfecting a lien in the property interest of a non-debtor and supports the conclusion that recording the Deed of Trust violated the codebtor stay. In In re Holder, the debtor and his non-debtor ex-spouse owned a mobile home in which the creditor held an unperfected lien. 260 B.R. 571, 573 (Bankr. M.D. Ga. 2001). Prior to the debtor's bankruptcy, the non-debtor spouse filed her own chapter 13 case during which the creditor purported to perfect its interest in the mobile home without obtaining relief from the codebtor stay. Id. The court held that perfection of the lien as to the (then non-filing) debtor violated the codebtor stay in his spouse's case. Id. at 576. In concluding that the codebtor stay was intended to prevent perfection of a lien in property of a non-filing codebtor, the court looked to the legislative history of § 1301 stating that a court usually should modify the codebtor stay to permit perfection of a lien against non-debtor property.

28

Id. (quoting S. Rep. No. 989 at 139 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5925).[6] By indicating that the codebtor stay should be modified to permit perfection of the interest, the court concluded that Congress necessarily intended the stay must apply in the first place.  Id.  For the reasons stated herein, this Court agrees with the conclusion in Holder, and finds that perfecting a lien in non-debtor property can violate the codebtor stay if the perfection meets the other elements of the codebtor stay violation and has the effect of placing direct or indirect pressure on the debtor to satisfy the obligation.  At this point in the litigation, and construing all facts in a light most favorable to the non-moving party, the Court cannot conclude as a matter of law that the perfection of the lien could not have had the effect of placing direct or indirect pressure on Debtor to satisfy the obligation.

Therefore, the Plaintiffs have presented a plausible claim for relief that recording the Deed of Trust in Rockingham County violated the codebtor stay.

---

[6] S. Rep. No. 989 at 139 states:

> Under subsection (c), if the codebtor has property out of which the creditor's claim can be satisfied, the court can grant relief from the [codebtor] stay absent the transfer of a security interest in that property by the codebtor to the creditor. Correspondingly, if there is a reasonable cause to believe that property is about to be disposed of by the codebtor which could be used to satisfy his obligation to the creditor, the court should lift the stay to allow the creditor to perfect his rights against such property.

5.  **Plaintiffs claims are not barred by the statute of limitations, laches, or waiver.**

    a. **The statute of limitations does not bar the request to avoid the lien.**

This Court has held that a violation of the automatic stay is void ab initio.  In re Carr, Case No. 18-80386, Order Granting Debtors' Motion to Enforce Automatic Stay, ECF No. 98 at 3; see In Re Holder, 260 B.R. at 576 (citing In re Albany Partner, Ltd., 749 F.2d 670, 675 (11th Cir. 1984)) ("stay violations are considered void ab initio, meaning that the violations are deemed without effect and are rendered an absolute nullity.").  It is irrelevant when a debtor, codebtor, or trustee raises the issue.  Id. at 577.  As the Eighth Circuit Bankruptcy Appellate Panel has explained:

> [T]he fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable. Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time. This may be an acceptable risk to some creditors when measured against a delayed pro rata distribution.

LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317, 323 (B.A.P. 8th Cir. 1999) (quoting In re Garcia, 109 B.R. 335 (N.D. Ill. 1989)).

To the extent that recording the Deed of Trust in Rockingham County violated the codebtor stay, it is void, and

there is no statute of limitations or waiver that will effectively redeem the void action. Cf. Holder, 260 B.R. at 577 (quoting Vierkant, 240 B.R. at 323) ("Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time. This may be an acceptable risk to some creditors when measured against a delayed pro rata distribution."). Defendant has not cited any statute of limitations to which a claim for violation of the codebtor stay would be subject.[7]

---

[7] In its Supporting Memo, Defendant states:

> [A]ny cause of action to avoid a transfer under Section 544(a) would be time barred by the passage of more than seven (7) years since the re-recording of the Deed of Trust. This is a court of equity, and equity dictates that a delay of this magnitude does not work a hardship on the Bank under the doctrine of laches and waiver.

ECF No. 17 at 37 ¶ 118. For the reasons below, the affirmative defenses of laches and waiver are not properly determined as a matter of law at this stage of the litigation. Defendant did not cite any other statute in support of its limitation or laches arguments in its Supporting Memo. In Defendant's Answer, filed after the Court denied the Motion to Dismiss, Defendant pleads the affirmative defense of the limitations period under § 546(a) with respect to the trustee's claim under § 544. ECF No. 33 at 6; see In re Margaux Tex. Ventures, Inc., 545 B.R. 506, 526 (Bankr. N.D. Tex. 2014) (holding that § 546(a) is not jurisdictional and "is without a doubt a statute of limitations" subject to waiver, tolling, or estoppel); In re Madeoy, 551 B.R. 172, 180 (D. Md. 2016) (stating that § 546 is a statute of limitations). This affirmative defense has not been sufficiently argued or briefed to be resolved at this stage of the litigation and will be preserved for summary judgment or trial.

**b. The remaining affirmative defenses do not sufficiently appear on the face of the Amended Complaint such that the claims should be dismissed under Rule 12(b)(6).**

Laches is an affirmative defense in equity that may be raised to bar "long-dormant claims for equitable relief." City of Sherill v. Oneida Indian Nation of N.Y., 544 U.S. 197, 217 (2005). Courts generally decline to resolve affirmative defenses, including laches, at the Rule 12(b) motion stage. Acosta v. Jardon & Howard Techs., Inc., Case No. 4:18-CV-16-D, 2018 U.S. Dist. LEXIS 187927, at *4 (E.D.N.C. Nov. 2, 2018). The defendant bears the burden of establishing an affirmative defense, whereas a motion tests "the sufficiency of a complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Therefore, an affirmative defense can only be established in a Rule 12(b)(6) motion if all facts necessary to the affirmative defense "clearly appear on the face of the complaint." Richmond, Fredericksburg & Potomac R.R. v. Frost, 4 F.3d 244, 250 (4th Cir. 1993). "[Federal Rule of Civil Procedure] 12(b)(6) . . . generally cannot reach the merits of an affirmative defense" except in the "relatively rare circumstances" in which facts sufficient to rule on the affirmative defense are alleged in the complaint. Goodman, 494 F.3d at 464; see U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 148 (4th Cir. 2014). Although

courts can consider laches in the context of a motion to dismiss under Rule 12(b)(6), laches requires a fact-intensive analysis that is usually inappropriate to resolve on the face of the complaint. See E.E.O.C. v. Am. Nat'l Bank, 574 F.2d 1173, 1176 (4th Cir. 1978); Champion Labs., Inc. v. Cent. Ill. Mfg. Co., 157 F. Supp. 3d 759, 765-66 (N.D. Ill. 2016); Lennon v. Seaman, 63 F. Supp. 2d 428, 438-39 (S.D.N.Y. 1999).

Laches requires the defendant to prove two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990) (quoting Costello v. United States, 365 U.S. 265, 282 (1961)). The first element of laches, lack of diligence, requires the defendant to show that the plaintiff delayed "inexcusably or unreasonably" in bringing the action. White, 909 F.2d at 102 (citing Nat'l Wildlife Fed'n v. Burford, 835 F.2d 305, 318 (D.C. Cir. 1987)). For a delay to be inexcusable or unreasonable, the delay must occur after the plaintiff discovers, or with reasonable diligence could have discovered, the facts giving rise to his claim. Id. Where there is no evidence that the plaintiff knowingly delayed in bringing a claim, courts decline to find lack of diligence. See Johnson v. Penn. Nat'l Mut. Cas. Ins. Co., 447 F. Supp. 3d 372, 381 (D. Md. 2020) ("[S]ince laches implies negligence in not asserting a right within a reasonable

33

time after its discovery, a party must have had knowledge, or means of knowledge, of the facts which created his cause of action in order for him to be guilty of laches."); <u>Ward v. Ackroyd</u>, 344 F. Supp. 1202, 1212 (D. Md. 1972). The defendant can show lack of diligence through evidence that the action was not commenced within the applicable statute of limitations or facts indicating a lack of vigilance on the part of the plaintiff. <u>White</u>, 909 F.2d at 102.

The second element of laches, prejudice, requires the defendant to show "a disadvantage on the part of the defendant in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the plaintiff's conduct." Id.. The defendant may either rest on the inference of prejudice created by the plaintiff's lack of diligence or introduce additional evidence to show prejudice. <u>Id.</u> (quoting <u>Giddens v. Isbrandtsen Co.</u>, 355 F.2d 125, 128 (4th Cir. 1966)).

In this case, the two elements of the laches affirmative defense do not "clearly appear on the face of the complaint." <u>Richmond</u>, 4 F.3d at 250. As with all other aspects of a motion under Rule 12(b)(6), all reasonable inferences must be drawn in favor of the non-movant. Doing so, the Court cannot determine if Debtor acted with a lack of diligence because the Amended Complaint does not indicate when Debtor knew or reasonably should have known about the facts giving rise to his claim.

White, 909 F.2d at 102 ("An inexcusable or unreasonable delay may occur only after the plaintiff discovers or with reasonable diligence could have discovered the facts giving rise to the cause of action."). Without facts alleging more than the mere passage of time, the Court cannot find that the Debtor was unreasonably dilatory in asserting his claim as a matter of law. See Ward, 344 F. Supp. at 1212 (finding no lack of diligence where facts giving rise to claim occurred nearly 10 years before claims were filed because there was no evidence plaintiffs "knowingly sat on rights and delayed bringing suit"). Similarly, the Court cannot conclude that Defendant has been prejudiced as a matter of law. Neither Debtor's Amended Complaint nor Defendant's Motion contain factual allegations from which the Court may conclude that any delay caused prejudice to the Defendant as a matter of law. See White, 909 F.2d at 102 ("[T]he defendant is ultimately required to prove prejudice. . . ."). These issues are more appropriately addressed at a later stage in this proceeding.

**6.  To the extent that the lien is unrecorded, Trustee may avoid it under § 544(a) even in the absence of a transfer of property by the Debtor.**

A trustee's powers under § 544(a) are not limited solely to avoidance of transfers. 11 U.S.C. § 544(a) ("The trustee shall have . . . the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by-- (3) a bona

35

fide purchaser of real property . . ..") (emphasis added); see In re Granada, Inc., 92 B.R. 501, 505 (Bankr. D. Utah 1988) ("This § 544(a)(3) power to avoid any transfer of property of the debtor that is voidable by a bona fide purchaser is in addition to the trustee's § 544(a)(3) position of having the 'rights and powers' of a bona fide purchaser . . ..").  Under § 544(a)(3), the trustee has the rights and powers of a bona fide purchaser, without regard to any knowledge.  See SunTrust Bank, N.A. v. Macky (In re McCormick), 669 F.3d 177, 180 (4th Cir. 2012).  As the court in Granada explained;

> The language of § 544(a) provides that the trustee shall have the rights and powers of (3) a bona fide purchaser of real property from the debtor.  The legal fiction created by the statute assumes a transfer from the debtor to a bona fide purchaser on the date of filing. The trustee is then clothed with whatever legal rights the bona fide purchaser would possess. . . the debtor's interest in the property (or lack thereof) may well limit the bona fide purchaser's "rights and powers."

Granada, 92 B.R. at 504 (internal citations, emphasis, and quotations omitted).

State law defines the rights and powers of a bona fide purchaser.  McCormick, 669 F.3d at 180.  North Carolina is a pure race jurisdiction, and "[i]f a prior lien is not properly recorded in accordance with the system, then the purchaser can count on taking property as if no lien exists . . .."  Id. at 181 (citing Hill v. Pinelawn Mem'l Park, Inc., 304 N.C. 159, 282 S.E.2d 779, 782 (N.C. 1981)) (finding the trustee could avoid a

lien on one parcel where the lien was against two parcels but recorded on the other).   Therefore, to the extent that this Court finds that the recording of the Deed of Trust is void, Trustee is entitled to avoid the unperfected lien.   Trustee has asserted a plausible claim for relief under § 544(a)(3).

For the reasons set forth herein, the Motion was denied.

[END OF ORDER]