**SO ORDERED.**

**SIGNED this 22nd day of April, 2022.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Leonardo Portuesi, | ) | Chapter 13 |
| | ) | Case No. 19-11275 |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Leonardo Portuesi and Anita Jo | ) | |
| Kinlaw Troxler, Trustee, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 20-2018 |
| | ) | |
| The Bank of New York Mellon Trust | ) | |
| Company, N.A., | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION GRANTING DEFENDANT'S SUMMARY JUDGMENT

This adversary proceeding is before the Court on cross motions for summary judgment.  For the reasons stated herein, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

### I. Jurisdiction And Authority

The Court has subject matter jurisdiction over this

proceeding under 28 U.S.C. § 1334(b).  Under 28 U.S.C. § 157(a),
the United States District Court for the Middle District of North
Carolina has referred this case and these proceedings to this Court
by its Local Rule 83.11.  These are statutorily core proceedings
under 28 U.S.C. § 157(b).  The parties have expressly consented to
the entry of final orders by this Court for all matters raised in
the pleadings in this proceeding.  ECF No. 14.  This Court may
enter final orders and judgments in this proceeding.  Venue is
proper under 28 U.S.C. § 1409.

## II. Facts[1]

On October 6, 2006, Debtor's mother, Anna Portuesi ("Ms.
Portuesi"), obtained an undivided interest in real property located
at 170 Riverwood Drive, Browns Summit, Rockingham County, NC 27214
("Property"), by a North Carolina General Warranty Deed recorded
with the Rockingham County Register of Deeds.  ECF No. 58, at ¶ 1.
Contemporaneously, Ms. Portuesi, through Debtor acting as her
attorney in fact, executed a Deed of Trust for the benefit of Wells
Fargo Bank, N.A. (the "Prior Deed of Trust") that similarly was
recorded in Rockingham County.  Id. at ¶ 3.  Ms. Portuesi did not
discuss payment of the loan with Debtor and left it to Debtor to

---

[1] The Facts are taken from Defendant's brief.  Plaintiffs did not file any
response in opposition to Defendant's Motion.  See Local rule 7056-1(c) ("All
facts set forth in the statement of the movant shall be deemed admitted for the
purpose of the motion for summary judgment unless specifically controverted by
the opposing party.").  At the hearing, Plaintiffs affirmatively conceded that
all facts in Defendant's brief are true and there is no dispute of material
fact.

make payments.  Id. at ¶¶ 6-7.

On December 23, 2008, Debtor and Ms. Portuesi obtained a mortgage loan from Ideal Mortgage Bankers, Ltd ("Lender").  Id. at ¶ 12.  On the same day, Debtor and Ms. Portuesi executed a Deed of Trust for the benefit of Lender (the "Deed of Trust") to secure the mortgage loan, but the Deed of Trust was not recorded at that time.  Id. at ¶ 15; ECF No. 1, Doc. 1-4.

On June 19, 2009, Ms. Portuesi executed a North Carolina Quitclaim Deed (the "Quitclaim Deed") to herself and Debtor as tenants in common.  ECF No. 58, ¶¶ 9-11.  Debtor gave no consideration in exchange for the Quitclaim Deed, and neither Ms. Portuesi nor Debtor caused the Quitclaim Deed to be recorded at that time.  Id. at ¶ 11.  Thereafter, however, on February 4, 2010, and although the Property is located in Rockingham County, both the Deed of Trust and the Quitclaim Deed were recorded in the Guilford County Register of Deeds.  ECF No. 58, ¶¶ 9, 17.[2]  The Quitclaim Deed still has not been recorded in Rockingham County. ECF No. 58, ¶ 10.

On December 19, 2011, Ms. Portuesi filed a chapter 7 bankruptcy petition in the Middle District of North Carolina, Case No. 11-11909.  Id. at ¶ 21.  Ms. Portuesi listed the Loan secured by the Deed of Trust as secured debt.  Id. at ¶ 23.  The Court

---

[2] Nothing in the record explains why there was a delay in recording either of these documents or why they were recorded in the incorrect county.

granted her a discharge on April 2, 2012, thereby discharging her personal liability on the mortgage obligation.  Id. at ¶ 25.

Debtor filed a previous case under chapter 13 in the Middle District of North Carolina on March 12, 2013, Case No. 13-10315 ("First Chapter 13 Case").  In his schedules, Debtor listed a one-half interest in the Property as a tenant in common.  Id. at ¶ 27. On July 15, 2013, Debtor objected to Defendant's predecessor's secured claim, arguing that the secured claim should be disallowed because the Deed of Trust was not recorded in the county in which the real property was located.  Case No. 13-10315 C-13G, ECF No. 20.  While the objection was pending, and without seeking relief from the automatic stay or the codebtor stay, Defendant's predecessor in interest, Ocwen Loan Servicing, LLC ("Ocwen") recorded the Deed of Trust in Rockingham County on August 12, 2013.[3]  Counsel for Ocwen did not appear at the hearing on the objection to claim, and Ocwen withdrew its objection to confirmation.  Case No. 13-10315 C-13G, ECF No. 27.  As a result, on August 23, 2013, the Court entered its order confirming Debtor's plan, and, on August 29, 2013, the Court entered its order disallowing the secured claim because the Deed of Trust was not recorded in Rockingham County.  Id., ECF Nos. 25 and 28, respectively.  After disallowance, Debtor stopped making payments

---

[3] See ECF No. 56 at ¶¶ 19, 23; ECF No. 60, ¶ 1.

on the claim.  ECF No. 58, ¶ 30.  The Court entered its order granting Debtor a discharge on June 29, 2016.  Case No. 13-10315 C-13G, ECF No. 43.

On April 27, 2017, Ms. Portuesi executed a North Carolina General Warranty Deed transferring fee simple interest in the Property to Debtor and recorded the deed in the Rockingham County Register on May 2, 2017.  ECF No. 1, Doc. 1-3.  Sometime after September 19, 2018, Defendant commenced a power of sale foreclosure in Rockingham County.  ECF No. 58, ¶ 59.  The Rockingham County Superior Court entered a foreclosure order on September 24, 2019.  Id. at ¶ 61.  Defendant sold the Property at the foreclosure on November 13, 2019.  Id. at ¶ 63.  On November 20, 2019, Debtor filed a voluntary petition under chapter 13 within the ten-day upset bid period under N.C. Gen. Stat. § 45-21.27.  Id. at ¶ 64.

Debtor's schedules list the Property as his and Defendant's loan as disputed.  Case No. 19-11275, ECF No. 1, see ECF No. 58 at ¶ 65.  On January 27, 2020, Defendant filed a proof of claim in the amount of $146,289.34.  Id. at ¶ 66.  On September 20, 2020, the trustee filed a notice that Debtor changed his address to the Property address.  See ECF Nos. 67 and 69.  The Court confirmed Debtor's chapter 13 plan on September 23, 2020.  ECF No. 58 at ¶ 67.  Among the other provisions of the confirmed plan, Section 9 of the plan provides as follows:

By Order entered July 1, 2020, the Debtor's objection to

5

Claim No. 5 of The Bank of New York Mellon ("BNYM") was sustained to the extent that Claim No. 5 was disallowed solely to the Debtor's personal liability on the Note with the determination of the extent, validity, priority or enforceability of the lien of BNYM on the Debtor's non-residential real property, commonly known as 170 Riverwood Drive, Browns Summit, North Carolina ("property") being reserved for further order of the Court upon the filing of an Adversary Proceeding by the Debtor. The Debtor has filed an Adversary Proceeding challenging the extent, validity, priority or enforceability of the lien of BNYM against the Debtor's property. A finding that there is no valid lien against the Debtor's property will result in a liquidation requirement of $25,575.00, which will pay all allowed unsecured claims in full with interest at 7.0%. If the lien of BNYM is held to be a valid lien, automatic stay is lifted to allow BNYM 180 days from the entry of the judgment/order entered in the Adversary Proceeding to liquidate the property and file a documented deficiency claim. Funds for allowed unsecured claims will be reserved pending final determination of lien status in the Adversary Proceeding and the reserve will be removed for funds to be distributed upon entry of the order resolving the Adversary Proceeding.

ECF No. 72. Debtor's personal liability on the loan was discharged in his previous chapter 13 case, thus, Defendant does not hold an unsecured claim. The total amount of other claims in the case is $6,034.69. As of the hearing on this motion, the trustee holds $22,250.00 from Debtor's payments under the plan.

### III. Procedural Background

Debtor commenced this adversary proceeding by filing a complaint on August 14, 2020. ECF No. 1. Defendant filed a *Motion to Dismiss Complaint* in lieu of an answer. ECF No. 7. Debtor filed a *Motion to Amend Complaint to Join Additional Parties* as of right on October 7, 2020. ECF No. 10 (the "Motion to Amend

6

Complaint"). On October 8, 2020, this Court granted the Motion to Amend Complaint, rendering the pending motion to dismiss the original complaint moot. ECF No. 11. On October 9, 2020, Plaintiffs filed the *Amended Complaint to Determine Avoidance and the Extent of Defendant's Lien and for Declaratory Judgement*. ECF No. 12 (the "Amended Complaint"). Defendant filed a *Motion to Dismiss the Amended Complaint*. ECF No. 16. On March 31, 2021, this Court denied Defendant's motion to dismiss. ECF No. 31.

In their current motion, Plaintiffs move the Court to grant summary judgment and determine as a matter of law that Ocwen violated the codebtor stay under 11 U.S.C. § 1301 when it recorded the Deed of Trust during Debtor's First Chapter 13 Case. ECF No. 56. In addition, Plaintiffs argue that summary judgment should be granted because "[t]here is no genuine issue of material fact that the recording of the Deed of Trust during Debtor's First Chapter 13 Case is void ab initio as a violation of the codebtor stay." Id. Finally, Plaintiffs argue that they are entitled to summary judgment because "[t]here is no genuine issue of material fact that Defendant's unperfected lien on the property is avoidable under 11 U.S.C. §544." Id.

Defendant makes five arguments in its cross motion for summary judgment. First, Defendant argues that the trustee cannot avoid the Deed of Trust because recording it did not violate the stay or the codebtor stay. ECF No. 58. Second, even if the recording of

the Deed of Trust in Rockingham County was void because it was filed in violation of the codebtor stay, Defendant is entitled to a declaratory judgment that the Deed of Trust constitutes a valid and enforceable lien on the Property because the trustee does not have standing as a bona fide purchaser.  Third, even if the Deed of Trust is unenforceable, Defendant is entitled to be equitably subrogated to the Prior Deed of Trust.  Fourth, Defendant is entitled to a constructive or resulting trust in the Property.

Defendant filed a response in opposition to Plaintiffs' motion for summary judgment.  ECF No. 60.  It is undisputed that Debtor did not experience any direct or indirect pressure as a result of Ocwen recording the Deed of Trust.  Id.  Defendant therefore argues that recording the Deed of Trust did not violate the codebtor stay.

### IV. Standard Of Review

Summary judgment is appropriate when the matters presented to the Court "show[s] that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In considering a motion for summary judgment, the Court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004).  The party moving for summary judgment

has the initial burden of proving the absence of a genuine issue of material fact by "citing to particular parts of materials on the record." Fed. R. Civ. P. 56(c)(1)(A); <u>Celotex</u>, 477 U.S. at 323. Once this initial burden has been met, the nonmoving party must then set forth specific facts sufficient to raise a genuine issue for trial. <u>Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). "A dispute is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant." <u>Sweats Fashions, Inc. v. Pannill Knitting Co.</u>, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). Determinations of credibility, weighing the evidence, and drawing legitimate inferences from the facts are not appropriate on a motion for summary judgment. <u>Anderson</u>, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." <u>Id.</u>

The Court may consider any evidence in the record or submitted by the parties if it would be possible to introduce the evidence at trial. <u>See</u> Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible into evidence."); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial

in order to avoid summary judgment.").  What matters is not that the parties submit evidence in support or opposition to the motion in an admissible form, but that the "substance or content of the evidence . . . be admissible . . .."  Gully Brook Revocable Tr. v. Cook (In re Cook), Nos. 15-81220, 16-09015, 2017 Bankr. LEXIS 364, at *12 (Bankr. M.D.N.C. Feb. 9, 2017) (quoting 11 James Wm. Moore et al., Moore's Federal Practice, ¶ 56.91[2] (3d ed. 2014)).

## V. Discussion

### A.  Recording the Deed of Trust did not violate the codebtor stay under the circumstances in this case.

Section 1301 of the Bankruptcy Code provides in relevant part that, after the order for relief, "a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt . . .." 11 U.S.C. § 1301(a).  "While § 1301 references the codebtor, its purpose is to protect a debtor from 'indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor.'"  In re Portuesi, 2021 Bankr. LEXIS 1450, at *12 (Bankr. M.D.N.C. May 27, 2021) (citing 11 U.S.C. § 1301 (LexisNexis) (H.R. 95-959); In re Whitlock-Young, 571 B.R. 795, 804 (Bankr. N.D. Ill. 2017)).  For the codebtor stay to apply to a debt, the following three elements must be met: "1) the debt must be a consumer debt; 2) the consumer debt at issue

10

must be the debt of the debtor; and 3) the codebtor must be liable on the debt with the debtor[,]" In re Fadel, 492 B.R. 1, 15 (B.A.P. 9th Cir. 2013), or have secured such debt.

Defendant does not dispute that the codebtor stay applied to its claim.  There is no dispute in this case that the mortgage loan was a consumer debt for which Debtor was liable and that the Property owned by his mother secured the debt.  The issue is whether the Bankruptcy Code prohibits the perfection of a lien against a codebtor's property without lifting the codebtor stay. The Court must therefore consider whether perfecting a lien against a non-debtor's property is a per se violation of the codebtor stay. If it is not a per se violation, the Court must determine whether recoding the lien violated the codebtor stay under the circumstances of this case.

### 1. Perfecting a lien against a codebtor's property is not a per se violation of the codebtor stay.

Unlike § 362(a), § 1301 does not enumerate various categories of actions that constitute a violation of the codebtor stay. Instead, § 1301 provides that a creditor "may not act, or commence or continue any civil action, to collect" a debt subject to the codebtor stay.  11 U.S.C. § 1301(a).

To determine whether recording any deed of trust is an act to collect debt, the Court must examine the purpose for recording a deed of trust.  The purpose of recording a deed of trust is "to

11

protect creditors and such purchasers by giving them notice, upon the public records of all facts affecting the title to property of others in which they have or may have an interest." County Sav. Bank of Abbeville, S.C. v. Tolbert, 192 N.C. 126, 130 (1926). Recording of a deed of trust does not attempt to collect debt, it merely gives notice. The result of the recording of a deed of trust is that the lien on the property is perfected. Furthermore, the recording of a deed of trust does not affect the validity of the lien inter se. "[I]t is well settled that a deed of trust is valid between the parties even though it is not recorded." In re Commerford, 2016 Bankr. LEXIS 2620, at *9 (Bankr. M.D.N.C. July 14, 2016). Specifically, "North Carolina's recording statutes do not determine the legitimacy of a deed of trust as between the parties to it, but are designed to address priority as to subsequent lenders and purchasers for value." Id., see N.C.G.S. §47-20. In fact, unlike affirmative actions to collect a debt, a lender may record a deed of trust even if there is no default, and routinely do so at the inception of loans. Thus, perfection of a lien is not a per se violation of the codebtor stay because it is not necessarily an attempt to collect a debt.[4]

---

[4] Relying on In re Holder, 260 B.R. 571 (Bankr. M.D. Ga. 2001), Plaintiffs argue that recording a lien against a codebtor's property is a per se violation of the codebtor stay. In Holder, the court held that perfecting a lien against a codebtor's property was a violation of the codebtor stay. Id. at 577. In so holding, the court cited the legislative history that it quoted as: "The court should lift the stay to allow the creditor to perfect his rights against such property." Id. at 576 (citing S. Rep. No. 989, at 139 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5925). The court reasoned that, since Congress presumed

This is especially true in North Carolina where perfection is not a prerequisite to foreclosure. North Carolina law requires the following elements in a foreclosure action:

> (i) [a] valid debt of which the party seeking to foreclose is the holder, (ii) [a] default, (iii) [a]right to foreclose under the instrument, (iv) notice to those entitled to such under subsection (b), (v) that the underlying mortgage debt is not a home loan as defined in G.S. 45-101(1b), or if the loan is a home loan under G.S. 45-101(1b), that the pre-foreclosure notice under G.S. 45-102 was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed, and (vi) that the sale is not barred by G.S. 45-21.12A, then the clerk shall authorize the mortgagee or trustee to proceed under the instrument, and the mortgagee or trustee can give notice of and conduct a sale . . . .

N.C. Gen. Stat. § 45-21.16. "There is nothing in North Carolina law that requires a recorded deed of trust as a prerequisite to

---

that the court should modify the codebtor stay to permit perfection of a lien against a codebtor's property, the stay must apply to the situation in the first instance. The quoted portion, however, is not the full context of that legislative history. In fuller context, the history provides:

> Under subsection (c), if the codebtor has property out of which the creditor's claim can be satisfied, the court can grant relief from the stay absent the transfer of a security interest in that property by the codebtor to the creditor. Correspondingly, if there is a reasonable cause to believe that property is about to be disposed of by the codebtor which could be used to satisfy his obligation to the creditor, the court should lift the stay to allow the creditor to perfect his rights against such property.

S. Rep. No. 989, at 139 (1978). In context, the legislative history is referring to allowing a creditor to protect against a codebtor rendering himself or herself judgment proof while under the protection of the codebtor stay. In these instances, Congress has indicated that the court should modify the codebtor stay to permit the creditor to maintain the status quo by, inter alia, seeking to impose a lien against the property of a codebtor who may be dissipating assets. Such remedies are ancillary to a collection action. The passage is not referring to those situations in which the creditor already possesses a lien and merely seeks to perfect it. For this reason and the other reasons set forth herein, to the extent that Holder stands for the proposition that perfecting liens against a codebtor's property is a per se violation of the codebtor stay, this Court respectfully disagrees.

13

foreclosure, and Defendant's attorney conceded the point in the foreclosure proceeding." Portuesi, 2021 Bankr. LEXIS at *17 (citing ECF No. 17 at Exhibit C, 15, ¶¶ 12-23). For these reasons, the Court finds that recording a lien against a codebtor's non-estate property was not a per se violation of the codebtor stay under § 1301.

2. **Based on the circumstances of this case, the perfection of the lien was not a violation of the codebtor stay.**

Although perfection of a lien is not a per se violation of the codebtor stay, recording a lien against a codebtor's property can constitute a violation of the codebtor stay if it constitutes an act to collect a debt. "When determining whether an action violates the codebtor stay, bankruptcy courts consider whether the challenged action could have the effect of directly or indirectly pressuring the debtor through the codebtor." Portuesi, 2021 Bankr. LEXIS at *24. Section 1301 "is designed to protect a debtor operating under a Chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through his friends or relatives that may have cosigned an obligation of the debtor." Id. at *23-24 (citing Whitlock-Young, 571 B.R. at 804; Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A., 10 B.R. 488, 491 (N.D. Ill. 1981); 7 Norton Bankr. L. and Prac. 3d § 143:26, Origin of the codebtor stay).

Based on the circumstances of this case, the recording of the Deed of Trust did not create any direct or indirect pressure on Debtor to repay the loan during the First Chapter 13 Case. After the recording of the lien, Defendant took no action to collect from Debtor. There was no attempt to enforce the lien against the property during his case,[5] and Debtor testified that he was not even aware the bank had recorded the Deed of Trust. Ms. Portuesi testified that she felt no pressure to repay the loan. Likewise, Debtor testified that he felt no pressure to repay the loan. Neither Debtor, nor his mother took any action to satisfy or avoid the unperfected lien in their prior respective bankruptcies, and, therefore, the lien remained enforceable between the parties regardless of its perfection. Debtor and Ms. Portuesi did not discuss the loan or the repayment of the loan with each other. Currently, Debtor continues to reside on the Property. Debtor has remained in possession of the Property and avoided payment on the loan for over eight years.

Debtor did not experience indirect pressure through his mother either. Ms. Portuesi was not aware of the recording in the proper country in August of 2013. She left all the financial handling to Debtor. Thus, it does not seem that Ms. Portuesi had any influence over Debtor to pay the loan. Plaintiffs have not

---

[5] Even without recording, the lien would have been enforceable between the parties. Neither Debtor, nor his mother took any action to avoid the unrecorded lien.

offered any evidence to show that Debtor felt any direct or indirect pressure to pay the loan during his First Chapter 13 Case.

This case differs from In re Singley, where the bankruptcy court in the Southern District of Georgia denied summary judgment in favor of a creditor that allegedly violated the codebtor stay by making an unfavorable credit report against the codebtor. In drawing "all justifiable inferences from the facts in favor of the non-moving party," the court could not conclude as a matter of law that the adverse report was not made with the intent to collect the debt.  233 B.R. 170, 173 (Bankr. S.D. Ga. 1999).  Because "a genuine issue exist[ed] as to whether the report was made with the intent to collect the pre-petition debt from Debtor and/or Mrs. Singley," the court denied summary judgment.  Id. at 174.  Unlike the facts in Singley, there is no evidence on the record in which a reasonable finder of fact could determine that Debtor felt direct or indirect pressure to pay the obligation as a result of the recording of the Deed of Trust, or that it was part of an effort to collect the debt.

For the foregoing reasons, the perfection of the lien was not a violation of the codebtor stay.  Therefore, Defendant is entitled to summary judgment.[6]

---

[6] Since summary judgment is granted for the reasons set forth herein, it is not necessary for the Court to reach the other arguments raised by Defendant.

## VI. Conclusion

Defendant did not violate the codebtor stay because under the facts of this case, recording the Deed of Trust was not an act to collect a debt as contemplated by § 1301.  Because the act of recording the Deed of Trust did not violate the codebtor stay, the recording is not void ab initio, and the trustee cannot avoid the Deed of Trust as a bona fide purchaser.  Based on the foregoing, the Court will enter its JUDGMENT contemporaneously herewith:

(1)   GRANTING Defendant's Motion for Summary Judgment and dismissing the Complaint with prejudice;

(2)   DENYING Plaintiffs' Motion for Summary Judgment;

(3)   Modifying the automatic stay pursuant to 11 U.S.C. § 362(d) and the terms of Debtor's plan to permit Defendant to exercise its rights against the Real Property; and

(4)   Allowing Defendant the later of: (i) 180 days after the entry of this Judgment; or (ii) if this case is converted to a case under chapter 7, the deadline to file proofs of claim in the converted case under Rule 1019(2)(A) to file any deficiency claim.

[END OF DOCUMENT]

<u>PARTIES TO BE SERVED</u>
Adversary No. 20-02018

Tommy S. Blalock, III
620 Green Valley Road, Suite 209
Greensboro, NC 27408

Ashley S. Rusher
PO Drawer 25008
Winston-Salem, NC 27114-5008

Jennifer R. Harris
Chapter 13 Office
Post Office Box 1720
Greensboro, NC 27402

William P. Miller, Bankruptcy Administrator
101 S. Edgeworth Street
Greensboro, NC 27401